# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| John Doe, | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | Judge: |
| v. | ) | |
| | ) | Magistrate Judge: |
| Metropolitan Government of Nashville and Davidson County, | ) ) ) | |
| Defendant. | ) ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff John Doe[1] ("Plaintiff"), by and through his undersigned counsel, alleges as follows based upon his personal knowledge or upon information and belief:

## NATURE OF THE ACTION

1. This is an employment discrimination action arising from Defendant's unlawful denial of employment to Plaintiff based solely on his health status. Plaintiff lives with the human immunodeficiency virus ("HIV") and was denied a previously offered position as a police officer because of his HIV status, even though he posed no significant risk to others and was otherwise qualified for the job for which he had applied. In this Complaint, Plaintiff challenges the legality of Defendant's policies and practices that in effect categorically bar individuals living with HIV from serving in the Defendant's police department, the Metropolitan Nashville Police Department ("Nashville PD"), despite medical advancements that render HIV status irrelevant to a person's ability to perform the duties of a police officer in any capacity.

---

[1] Plaintiff John Doe has moved to proceed using this pseudonym, rather than his legal name, to protect his privacy and safety regarding his HIV status.

1

2. Defendant's unlawful actions constitute a violation of federal law including, but not limited to, the Americans with Disabilities Act of 1990 ("ADA"), the Civil Rights Act of 1991, and the Rehabilitation Act of 1973. As a result, Plaintiff is entitled to injunctive relief including, but not limited to, his right to be employed as a police officer with the Nashville PD and by the Metropolitan Government of Nashville and Davidson County ("Nashville" or the "Defendant"). Plaintiff is also entitled to monetary relief, in an amount to be determined at trial.

3. As described below, Plaintiff is a Tennessee native and decorated public servant. Plaintiff was first hired as a police officer with the Memphis Police Department ("Memphis PD") in 2017. Plaintiff is currently a police officer with the Tennessee Highway Patrol where he has been employed since 2022.

4. In 2019, Plaintiff was named the Memphis PD Officer of the Year, as well as the Officer of the Year at his assigned precinct.

5. In 2019, Plaintiff sought employment with the Defendant. His wife had obtained a new job in Nashville requiring the family to move from Memphis to Nashville.

6. Plaintiff applied to the Nashville PD in March 2019 and passed a preliminary background check, physical agility test, and a written test. On February 25, 2020, Plaintiff was offered a position with the Nashville PD contingent upon him passing a psychological evaluation and medical examination. Plaintiff passed the psychological evaluation. During his medical examination, Plaintiff submitted to a blood test, the results of which showed that he is an individual living with HIV.

7. Plaintiff first learned of his HIV status in 2015 and, since then, has aggressively and diligently received treatment. Plaintiff has been living with HIV ever since without any material health complications or progression towards acquired immunodeficiency syndrome ("AIDS").

8. Indeed, according to Plaintiff's healthcare providers, Plaintiff's HIV viral load is fully suppressed and un-transmittable, and he poses no threat of transmission to his co-workers or the community at large.

9. In a letter sent to Defendant, dated April 7, 2020, Plaintiff's primary care provider, Regional One Health, stated that Plaintiff's viral load "has been suppressed or undetectable the entire 3 years. Undetectable means un-transmittable. He does not propose [*sic*] any threat to co-workers or members of the community … [h]e is compliant with his medication, and never misses any doses. He remains in great health, and this virus will not and has not ever effected [*sic*] his job performance or job duties …. I would strongly recommend him for any job without hesitation."

10. Despite Plaintiff's decorated career, devotion to public service, demonstrated ability to fully perform all duties required of a police officer, and inability to transmit HIV to co-workers or community members, Defendant rescinded Plaintiff's offer of employment upon learning that Plaintiff was living with HIV and did so without engaging in the legally required individualized inquiry and individualized assessment or offering Plaintiff any accommodation.

11. Rather, Defendant unabashedly indicated that the Nashville PD simply has a policy that if a person is living with HIV, then Defendant will not employ that person as a police officer. And this is the end of the inquiry. Defendant's stated policy is a violation of federal law and must be enjoined.

12. Defendant's conduct has harmed Plaintiff and violated his right to be free from disability-based discrimination. Plaintiff is entitled to both injunctive and monetary relief, as described below.

## **PARTIES**

13. Plaintiff is a resident and domiciliary of Smyrna, Tennessee. Plaintiff is a person living with HIV and is therefore living with a disability as defined under the ADA and Rehabilitation Act. He is protected from unlawful discrimination based on his HIV-positive status.

14. Nashville is a political subdivision of the State of Tennessee. The Nashville PD is an agency of Nashville.

15. Defendant is an employer within the meaning of 42 U.S.C. §§ 12111(5) and covered entities within the meaning of 42 U.S.C. § 12111(2) and 29 C.F.R. § 1630.2(b).

///

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this action under 42 U.S.C. § 12117(a) and § 2000e-5(f), 28 U.S.C. §§ 1331 and 1345.

17. This Court has authority to grant a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and authority to grant equitable relief and monetary damages pursuant to 42 U.S.C. § 12117.

18. Venue is proper in this district under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-25(f)(3) because Defendant is located in this judicial district and the events and omissions giving rise to this action occurred in this judicial district.

## STATEMENT OF FACTS

*Plaintiff's HIV Status*

19. In 2015, Plaintiff learned that he has HIV. At all relevant times, Plaintiff has been living with HIV.

20. Plaintiff is Black. The CDC estimates that, as of 2019, although Black people accounted for 13% of the U.S. Population, they comprise 40% of people living with HIV.[2] According to the Tennessee Department of Health, the rate of Black males living with an HIV diagnosis is 6.2 times that of White males.[3]

21. Plaintiff is an individual with a disability within the meaning of 42 U.S.C. § 12102 because he has HIV, a physical impairment that "substantially limits immune function." 29 C.F.R. § 1630.2(j)(3)(iii).

22. Plaintiff is also an individual with a disability within the meaning of the ADA because Defendant regarded Plaintiff as having a disability when they withdrew his conditional offer of employment based on his perceived impairment. 42 U.S.C. § 12102(3).

23. Plaintiff's HIV is well-controlled with medication. Plaintiff diligently takes his medication and has not experienced any side-effects or adverse consequences from his medication.

---

[2] https://www.cdc.gov/nchhstp/newsroom/fact-sheets/hiv/black-african-american-factsheet.html.
[3] https://www.tn.gov/health/health-program-areas/statistics/health-data/hiv-data.html.

4

He also takes his medication at the required time intervals without the need for any special breaks or other accommodation.

24. According to Plaintiff's healthcare providers, Plaintiff's viral load is, and during all relevant times was, fully suppressed.

25. Accordingly, Plaintiff's HIV does not present a significant risk to the health or safety of himself or others in performance of his duties as a police officer. Per the CDC, when a person achieves viral suppression, it is virtually impossible to transmit HIV. In other words, there is no dispositive evidence in the existing record that Plaintiff is unqualified to perform the essential functions of a police officer for the Nashville PD.

*Plaintiff's Law Enforcement Career with the Memphis PD*

26. Plaintiff has long been devoted to a life of public service in public safety. For more than a decade, Plaintiff has worked in positions related to law enforcement.

27. Plaintiff first began his career in law enforcement when he enrolled in the Memphis PD police academy in 2011. Unfortunately, Plaintiff suffered a foot injury just a few weeks before graduation, which put his dreams on hold.

28. Plaintiff remained employed by the Memphis PD by serving as a clerk at the Memphis impound lot while his foot healed. Once healed, he resumed his training in the Memphis PD police academy.

29. In January of 2018, Plaintiff graduated from the Memphis PD police academy. He subsequently served as a field training officer for eighty (80) days until he began working shifts as a patrolman for two (2) years.

30. In October of 2019, Plaintiff identified, chased, and apprehended multiple suspects that were wanted for their alleged involvement in the murder of a University of Memphis professor.

31. Plaintiff received multiple awards for his heroism including Officer of the Year for Memphis PD and his local precinct.

32. Plaintiff was also interviewed and appeared on the local news to discuss his courageous acts.

33. After two (2) years as a patrolman, Plaintiff volunteered for Memphis PD's crisis intervention team ("CIT"). CIT officers respond to crisis calls that place officers face-to-face with complex issues relating to mental illness, including gun violence.

34. Plaintiff was subsequently promoted to a Police 2 function within the Memphis PD. As part of this promotion, Plaintiff received a raise, which he used to help pay for his master's degree.

35. By any measure, Plaintiff has been a model officer and a credit to each police department and community he has served.

*Plaintiff's Application to the Nashville PD and Defendant's Rejection of his Application on Account of Plaintiff's HIV Status*

36. In 2019, Plaintiff's wife obtained a new job in Nashville and the family decided to move to the Nashville suburbs.

37. In September of 2019, Plaintiff applied to the Nashville PD so he could stop commuting between Memphis and Nashville and be closer to his family, including his wife and daughter. A copy of the job posting is attached hereto as Exhibit A.

38. Upon review of his application, on February 25, 2020, Plaintiff received an offer from the Nashville PD on the condition that he pass a medical examination.

39. Plaintiff then met with Dr. Gill Wright ("Dr. Wright"), a physician with the Metropolitan Public Health Department to whom he was referred for the medical examination in connection with his application for employment with the Nashville PD.

40. As part of the medical examination, Plaintiff was required to undergo a blood test. He was not informed of the purpose for the bloodwork or what was being tested as part of the bloodwork.

41. When the analysis of his bloodwork was complete, a nurse called Plaintiff to inform him that he was HIV positive. Plaintiff explained to the nurse that he was aware of the diagnosis, and that his virus had been undetectable, or un-transmittable, for over five (5) years, as described in Regional One Health's letter.

42. On March 12, 2020, the Nashville PD sent Plaintiff a rejection letter (the "Rejection Letter") withdrawing his prior offer of employment. The explanation stated simply that, "The Civil Service Medical Officer's report states you are not recommended to attend the Police Academy. All applications for the position of Police Officer Trainee must meet or exceed the medical standards set forth in the United States Army Induction Standards, 40-501."[4] The Rejection Letter informed Plaintiff of his appeal rights. The Rejection Letter is attached hereto as Exhibit B.

43. The Rejection Letter also stated, "Applicants who do not meet the physical standards of Army Regulation 40-501 may file a request with the Civil Service Commission for a waiver. The applicant must submit any additional medical evaluations to the examining physician at the Health Department."

44. Plaintiff called the Nashville PD to discuss the Rejection Letter. During the call, a representative of the Nashville PD informed Plaintiff that while he could appeal the decision set forth in the Rejection Letter, his application would ultimately be denied due to his HIV status.

45. Plaintiff subsequently appealed the decision by requesting a medical waiver, as instructed in the Rejection Letter, and explained that his diagnosis does not affect his ability to act as a police officer, as he is currently an active police officer in Tennessee.

46. In a letter dated April 7, 2020, Plaintiff's primary care provider of three (3) years at Regional One Health substantiated that Plaintiff's viral load has been "undetectable" and "un-transmittable" for all three (3) of those years (the "Regional Health Letter"). The Regional Health Letter stated that Plaintiff "does not propose [sic] any threat to co-workers or members of the community" and that the "virus will not and has not ever effected [sic] his job performance or job duties." The Regional Health Letter also stated that "[Plaintiff] is compliant with his medication, and never misses any doses. He remains in great health, and this virus will not and has not ever

---

[4] In July 2022, Nashville implemented four (4) Charter amendments, including an amendment to Charter Section 8.208, which removed the requirement that an appointee meet physical standards as set forth by the United States Army or Navy.

affected job performance or job duties." The Regional Health Letter is attached hereto as Exhibit C.

47. On April 14, 2020, the Civil Service Commission (the "Commission") met and denied Plaintiff's medical waiver claims notwithstanding the medical evidence to the contrary and Plaintiff's exemplary qualifications for performing the functions of his job as a police officer.

48. The Commission stated that Plaintiff's blood results show he is HIV positive.

49. In support of its decision, the Commission cited Dr. Wright's medical statement that "Plaintiff cannot perform all the safety sensitive functions of the job without placing [others] at increased risk" and claimed that "no reasonable accommodations are available." Dr. Wright's medical statement is attached hereto as Exhibit D.

50. The Commission cited no objective scientific or medical evidence in support of its opinion that Plaintiff posed a risk to others because of his HIV status and was therefore not entitled to a medical waiver.

51. The Commission also made no individualized findings about how Plaintiff's HIV status affected his ability to serve as a police officer.

52. Defendant's recission of their offer to employ Plaintiff as a police officer also forced Plaintiff to find alternative employment with a different law enforcement agency in Tennessee.

53. As a result of Defendant's recission of their offer to employ Plaintiff as a police officer, Plaintiff experienced lost wages, emotional pain and suffering, stress, anxiety, loss of enjoyment of life, humiliation, inconvenience, and other monetary and dignitary harms.

**PLAINTIFF'S EXHAUSTION OF AVAILABLE ADMINISTRATIVE REMEDIES**

54. Defendant's conduct in rescinding Plaintiff's employment offer with the Nashville PD based on Plaintiff's status as a person living with HIV is a violation of Plaintiff's rights under the ADA, the Civil Rights Act of 1991, and the Rehabilitation Act.

55. On August 6, 2020, Plaintiff filed a timely Charge of Discrimination with the U.S. Equal Opportunity Employment Commission ("EEOC") alleging that Defendant's rescission of

Plaintiff's employment offer with the Nashville PD constituted unlawful discrimination under federal law.

56. In response to Plaintiff's Charge of Discrimination, Defendant denied that Plaintiff's disability "does not prevent him from performing the duties of a police officer with [Nashville PD]." A copy of Defendant's position statement is attached hereto as Exhibit E.

57. On December 22, 2021, the EEOC issued a Determination of Probable Cause to Plaintiff, stating that the "evidence obtained during the course of the investigation establishes reasonable cause to believe that [Nashville PD] discriminated against [Plaintiff] when he was immediately disqualified for employment after his disability was revealed during a post-hiring medical examination. Respondent failed to engage in the interactive process to address any accommodation available to Charging Party. As a result, [Nashville PD's] job offer was rescinded, and he was denied employment by Respondent because of his disability in violation of the Americans with Disabilities Act Amendments Act of 2008 (ADAAA)." A copy of the EEOC Determination of Probable Cause is attached hereto as Exhibit F.

58. On April 25, 2023, the U.S. Department of Justice issued Plaintiff a Notice of Right to Sue letter. Plaintiff received the Notice letter on April 25, 2023. This suit is timely commenced within 90 days of Plaintiff's receipt of the Notice letter.

59. Plaintiff has exhausted all administrative remedies available to him. All conditions precedent to the initiation of this suit have been fulfilled.

**CAUSES OF ACTION**

**COUNT 1: VIOLATION OF TITLE I OF THE
AMERICANS WITH DISABILITIES ACT**

(42 U.S.C. § 12111 et seq.)

60. Plaintiff realleges and reincorporates herein by reference each and every foregoing allegation of the Complaint as if they were repeated in full herein.

61. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

9

Case 3:23-cv-00736   Document 1   Filed 07/21/23   Page 9 of 15 PageID #: 9

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

62. The ADA defines "covered entity" as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2).

63. The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

64. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

65. The ADA regulations define a "physical or mental impairment" as defined as (1) "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or (2) [a]ny mental or psychological disorder, such as an intellectual disability…, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h).

66. The ADA defines "major life activities" to include, the "operation of a major bodily function, including … functions of the immune system [and] normal cell growth." 42 U.S.C. § 12102(2)(B).

67. "The term 'substantially limits' shall be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* § 1630.2(j)(1)(ii). In addition, the "determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." *Id.* § 1630.2(j)(1)(vi).

68. Being HIV positive, even if asymptomatic, is a disability for purposes of the ADA. 28 C.F.R. § 36.104. HIV is a chronic medical condition and an "impairment that substantially limits [a] major life activit[y]," 42 U.S.C. § 12102(1)(A), specifically, "the operation of a major bodily function, . . . the immune system." 42 U.S.C. § 12102(2)(B).

69. Title I of the ADA, 42 U.S.C. §§ 12111-12117, and its implementing regulation, 29 C.F.R. Part 1630, prohibit covered entities, such as Defendant, from discriminating against qualified individuals on the basis of disability in regard to the discharge of employees and other terms, conditions, and privileges of employment.

70. Under the ADA, the term "discriminate against a qualified individual on the basis of disability" includes "utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability." 42 U.SC. § 12112(b)(3)(A).

71. Plaintiff is a qualified individual with a disability within the meaning of the ADA who during all relevant time periods could perform the essential functions of a police officer with or without accommodation. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m).

72. Defendant failed to engage in an individualized assessment of Plaintiff's ability to serve as a police officer. Among the many deficiencies in their assessment is any meaningful consideration of how Plaintiff's viral suppression eliminated both any transmission risk and any deterioration in his health that might affect his ability to perform the essential functions of the job.

73. Defendant knowingly discriminated against Plaintiff in violation of 42 U.S.C. § 12112(a) and 29 C.F.R. § 1630.4 by withdrawing Plaintiff's conditional offer of employment as a police officer on the basis of his HIV disability.

## COUNT 2: VIOLATION OF THE REHABILITATION ACT OF 1973
(29 U.S.C.A. § 794)

74. Plaintiff realleges and reincorporates herein each and every foregoing allegation of the Complaint as if they were repeated in full herein.

75. The Rehabilitation Act of 1973 ("Rehabilitation Act") "prohibits discrimination against the disabled in federally funded programs." *Andrews v. State of Ohio*, 104 F.3d 803, 806 (6th Cir. 1997).

76. The Nashville PD is a federally funded program.

77. Plaintiff is a qualified individual with a disability within the meaning of the Rehabilitation Act. 29 U.S.C. § 706(8).

78. "By statute, ADA standards govern Rehabilitation Act claims of employment discrimination." *Holiday v. City of Chattanooga*, 206 F.3d 637, 642 n.1 (6th Cir. 2000) (citing *Andrews*, 104 F.3d at 807).

79. Because Defendant violated Title I of the ADA, they also violated the Rehabilitation Act by denying Plaintiff employment because of his disability.

80. Defendant had knowledge of his federally protected rights under the Rehabilitation Act and acted with deliberate indifference by denying Plaintiff employment because of his disability.

81. As a direct and proximate result of the Defendant's unlawful conduct, Plaintiff has and will continue to suffer great harm, including but not limited to lost wages and benefits, humiliation, mental anguish, and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Enjoin and permanently restrain Defendant from refusing to employ individuals with disabilities, including persons with HIV;

2. Place Plaintiff in the position of police officer with the same salary and seniority that he would have occupied but for the Defendant's conduct, or award him front pay in lieu thereof;

3. Award Plaintiff all lost wages, bonuses, benefits, and other compensation that he would have received but for Defendant's unlawful conduct;

4. Award Plaintiff compensatory damages for his emotional pain, suffering, inconvenience, humiliation, and loss of enjoyment of life caused by Defendant's unlawful conduct, in amounts to be determined at trial;

5. Award Plaintiff punitive damages against Defendant;

6. Award Plaintiff his attorneys' fees and costs against Defendant;

7. Award Plaintiff prejudgment and post-judgment interest on any damage and attorneys' fees award;

8. Require an annual mandatory training for all of Defendant's employees, including those in management positions. The training shall describe the requirements of the ADA in hiring, retention, promotion, and discharge and describe the requirements of the ADA with respect to the terms, conditions, compensation, and privileges of employment, including specific information concerning the ability of persons living with HIV to perform the services and functions provided by Defendant; and

9. Grant such other additional relief as this Court deems just and proper.

# JURY DEMAND

Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

Electronically filed on: July 21, 2023

                                                                       Respectfully submitted,

                                                                       */s/John T. Winemiller*
                                                                       John T. Winemiller, BPR 021084
                                                                       MERCHANT & GOULD P.C.
                                                                       800 S. Gay Street, Suite 2150
                                                                       Knoxville TN 37929
                                                                       Telephone: 865-380-5960
                                                                       Facsimile: 612-332-9081

| | |
|---|---|
| Michael J. Sheehan* | Gregory R. Nevins* |
| Msheehan@mwe.com | gnevins@lambdalegal.org |
| MCDERMOTT WILL & EMERY LLP | LAMBDA LEGAL DEFENSE AND |
| 444 West Lake Street, Suite 4000 | EDUCATION FUND, INC. |
| Chicago, IL 60606-0029 | Southern Regional Office |
| Telephone: (312) 372-2000 | 730 Peachtree Street NE #640 |
| Facsimile: (312) 984-7700 | Atlanta, GA 30308 |
| | Telephone: (404) 897-1880, ext. 6230 |
| Paul M. Thompson* | Facsimile: (404) 897-1884 |
| PThompson@mwe.com | |
| MCDERMOTT WILL & EMERY LLP | Shelly L. Skeen* |
| 500 North Capitol Street, NW | sskeen@lambdalegal.org |
| Washington, DC 20001-1531 | LAMBDA LEGAL DEFENSE AND |
| Telephone: (202) 756-8000 | EDUCATION FUND, INC. |
| Facsimile: (202) 756-8087 | South Central Regional Office |
| | 3500 Oak Lawn Avenue, Suite 500 |
| Lisa A. Linsky* | Dallas, TX 75219-6722 |
| Llinsky@mwe.com | Telephone: (214) 219-8585, ext. 5228 |
| Michael Huttenlocher* | Facsimile: (214) 219-4455 |
| MHuttenlocher@mwe.com | |
| Kierstin Fowler* | Jose Abrigo* |
| Ksfowler@mwe.com | jabrigo@lambdalegal.org |
| Halle Landsman* | LAMBDA LEGAL DEFENSE AND |
| Hlandsman@mwe.com | EDUCATION FUND, INC. |

Gabrielle Lipsitz*
Glipsitz@mwe.com
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

Brian Casillas*
Bcasillas@mwe.com
MCDERMOTT WILL & EMERY LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: (310) 277-4110
Facsimile: (310) 277-4730

120 Wall Street, 19th Floor
New York, NY 10005-3919
Telephone: (646) 307-1913

John T. Winemiller, BPR 021084
jwinemiller@merchantgould.com
Elizabeth Harwood, BPR 037916**
eharwood@merchantgould.com
MERCHANT & GOULD P.C.
800 S. Gay Street, Suite 2150
Knoxville TN 37929
Telephone: 865-380-5960
Facsimile: 612-332-9081

*pro hac vice motions forthcoming

** admission pending (swearing in scheduled for July 24, 2023)

COUNSEL FOR JOHN DOE, PLAINTIFF

DM_US 197413286-15.099739.0040